IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 17-30388

_____

D.C. Docket No. 2:16-CV-13133

United States Court of Appeals
Fifth Circuit

**FILED**
May 16, 2018

Lyle W. Cayce
Clerk

TYANNE DAVENPORT,

    Plaintiff - Appellant

v.

EDWARD D. JONES & COMPANY, L.P.,

    Defendant - Appellee

Appeal from the United States District Court for the
Eastern District of Louisiana

Before DAVIS, JONES, and HIGGINSON, Circuit Judges.

J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that plaintiff-appellant pay to defendant-appellee the costs on appeal to be taxed by the Clerk of this Court.

STEPHEN A. HIGGINSON, Circuit Judge, concurring in part and dissenting in part.

Certified as a true copy and issued
as the mandate on **Jun 28, 2018**

Attest:
*Lyle W. Cayce*
Clerk, U.S. Court of Appeals, Fifth Circuit

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 17-30388

TYANNE DAVENPORT,

    Plaintiff – Appellant

v.

EDWARD D. JONES & COMPANY, L.P.,

    Defendant – Appellee.

United States Court of Appeals
Fifth Circuit
**FILED**
May 16, 2018
Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:16-CV-13133

Before DAVIS, JONES, and HIGGINSON, Circuit Judges.

W. EUGENE DAVIS, Senior Circuit Judge.*

    Tyanne Davenport ("Davenport") appeals the district court's order granting summary judgment in favor of Edward Jones & Company, L.P. ("Edward Jones"), on Davenport's two claims of quid pro quo sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and her state law false light invasion of privacy claim. The district court dismissed Davenport's constructive discharge quid pro quo claim

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Case: 17-30388   Document: 00514532348   Page: 2   Date Filed: 06/28/2018
Case 2:16-cv-13133-MLCF-MBN   Document 56   Filed 07/05/18   Page 3 of 18

No. 17-30388

because it was unexhausted and dismissed Davenport's bonus-based quid pro quo claim because, it concluded, this circuit does not recognize quid pro quo sexual harassment claims based on a supervisor's request that a subordinate date a third-party in exchange for monetary bonuses. The district court found that, in any event, Davenport had not offered sufficient evidence to create a genuine dispute as to whether she was denied a bonus, i.e., whether she suffered the tangible employment action required to make a quid pro quo Title VII claim actionable. The district court also dismissed Davenport's state law invasion of privacy claim because Davenport failed to show that her supervisor's conduct unreasonably invaded her privacy interest. Though this circuit recognizes quid pro quo harassment claims akin to Davenport's bonus-based claim, because we find that Davenport did not create a genuine dispute as to whether she suffered a tangible employment action, and because we agree that Davenport did not suffer an actionable invasion of privacy, we AFFIRM the district court's order.

## I.

On October 13, 2014, Coyne hired Davenport as the Branch Office Administrator for his financial planning office.[2] During Davenport's tenure, Coyne created a volatile workplace relationship. Coyne insulted Davenport and shouted at her on several occasions, and he used profanity to describe her personality and performance.[3] Despite his unsavory comments, Coyne conducted a "Trainee Milestone Review" of Davenport on March 31, 2015, and he approved a $400 bonus because Davenport was "exceeding expectations."

---

[2] The district court having granted summary judgment for Edward Jones, we "must assume the facts to be as alleged by [Davenport]." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 76 (1998).

[3] Among other things, Coyne called Davenport "incompetent" and a "fuckup," and he told her to not make him look like a "dick" in front of clients.

Case: 17-30388   Document: 00514532348   Page: 3   Date Filed: 06/28/2018
Case 2:16-cv-13133-MLCF-MBN   Document 56   Filed 07/05/18   Page 4 of 18

No. 17-30388

Sometime in September, Coyne's comments became sexual in nature. After learning that Harry Fisher ("Fisher"), a wealthy potential client, was interested in dating Davenport, Coyne told Davenport that she should "date" Fisher in exchange for "big bonuses." Davenport responded that she had a boyfriend and that she was not interested in dating Fisher. Coyne repeated his offer approximately three more times within thirty days, but Davenport never dated Fisher.

On October 1, 2015, Coyne completed Davenport's annual "Performance Review." Coyne rated Davenport as "exceeding expectations," and he recommended that she receive a 4% salary increase. However, Davenport did not receive a bonus.

On October 27, 2015, at an informal meeting between Coyne, Fisher, and another Edward Jones financial advisor, Kirk Delaune, Davenport interjected that Fisher should switch his account to Coyne's office. Coyne then, in front of Fisher, suggested to Davenport that "maybe we can get some nudie pictures of you . . . that might entice him." There were no nude pictures of Davenport. Nevertheless, she was offended and embarrassed.

The following day, Davenport reported the "nude picture" incident to Richie Kernion ("Kernion"), the district manager at Edward Jones. Kernion forwarded Davenport's complaint to Susan Miller ("Miller"), an associate relations representative at Edward Jones. Miller, in turn, contacted Davenport, who described the above interactions between her and Coyne. Miller then formally opened an investigation into Coyne's management practices, and Davenport applied for, and was granted, an extended leave of absence.

On November 5, 2015, Davenport filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"). In her charge, Davenport briefly described the "nude picture"

3

Case: 17-30388    Document: 00514532348    Page: 4    Date Filed: 06/28/2018
Case 2:16-cv-13133-MLCF-MBN   Document 56   Filed 07/05/18   Page 5 of 18

No. 17-30388

incident and her resulting leave of absence. She did not mention Coyne's alleged bonus offers.

Over the next two and a half months, Davenport consulted a therapist who advised Edward Jones that Davenport should not return to Coyne's office due to emotional trauma stemming from Coyne's behavior. Davenport then requested a transfer to a full-time administrator position at another office. Miller informed Davenport that such a transfer was impossible and that Davenport needed to return to work in order for Edwards Jones to complete its investigation. Miller advised Davenport that she could apply for other full-time positions at Edward Jones, but that the application process would likely be delayed given Davenport's "continuous leave of absence" status.

Davenport formally resigned from Edward Jones on January 19, 2016. After receiving Davenport's resignation, Edward Jones sent her two letters regarding employment options. The letters, dated January 20, 2016 and February 3, 2016, respectively, gave Davenport the option either (1) to "transfer" to another branch as an "on-call" Branch Office Administrator, which was a part-time position, or (2) to communicate with a recruiting contact regarding other full-time positions at Edward Jones. Davenport declined to pursue either option and indicated that she did not have any desire to return to Edward Jones as an employee. Davenport promptly secured full-time employment with another company.

Davenport received a notice of right-to-sue from the EEOC on April 25, 2016. She timely filed suit in the district court, alleging quid pro quo and hostile work environment sexual harassment claims under Title VII, as well as state-law claims of sexual discrimination, defamation, and "false light" invasion of privacy. Edward Jones moved for summary judgment on each of Davenport's claims, and, on May 3, 2017, the district court granted Edward Jones's motion in its entirety. The district court reasoned that (1) Davenport's

Case: 17-30388    Document: 00514532348    Page: 5    Date Filed: 06/28/2018
Case 2:16-cv-13133-MLCF-MBN   Document 56   Filed 07/05/18   Page 6 of 18

No. 17-30388

quid pro quo claim based on her "constructive discharge" from Edward Jones failed because she did not administratively exhaust that claim, (2) Davenport's quid pro quo claim based on the receipt of bonuses in exchange for acquiescence to sexual advances failed because "Fifth Circuit precedent implies that the sexual advances related to the alleged tangible employment action must relate to advances *with the supervisor*," and also because Davenport did not show that she had been denied a bonus, (3) Davenport's "hostile work environment" claim failed because Coyne's behavior was not "severe" or "pervasive," and (4) Davenport's invasion of privacy and defamation claims failed because Coyne's nude picture comment did not demonstrate "malice" and the comment, standing alone, did not seriously interfere with Davenport's privacy. Davenport timely appealed only the constructive discharge quid pro quo claim, the bonus-based quid pro quo claim, and the state law invasion of privacy claim.

## II.

We review the district court's grant of summary judgment de novo applying the same standards as the district court.[4] The court "must consider both direct and circumstantial evidence but may not make 'credibility assessments,' which are the exclusive province of the trier of fact."[5] That is, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"[6] In so determining, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[7] However, the court need not credit evidence that is "merely colorable" or not significantly

---

[4] *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013).

[5] *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 477 (5th Cir. 2002).

[6] *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

[7] *Liberty Lobby*, 477 U.S. at 255.

5

Case: 17-30388   Document: 00514532348   Page: 6   Date Filed: 06/28/2018
Case 2:16-cv-13133-MLCF-MBN   Document 56   Filed 07/05/18   Page 7 of 18

No. 17-30388

probative.[8] Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9]

### III.

#### A. Davenport's constructive discharge quid pro quo claim

Davenport first argues that the district court improperly dismissed her constructive discharge quid pro quo claim. In the district court, Davenport asserted that she suffered quid pro quo sexual harassment because she was constructively discharged from Edward Jones after she refused to date Fisher. Edward Jones countered that Davenport had not exhausted her administrative remedies, and that, in any event, Davenport could not demonstrate that her work conditions were so intolerable that a reasonable person in her position would have felt compelled to resign. The district court agreed with Edward Jones that Davenport failed to exhaust her administrative remedies and, consequently, pretermitted ruling on the merits.

To determine whether a Title VII claim has been exhausted, we construe the EEOC charge in its broadest reasonable sense and ask whether the claim "can reasonably be expected to grow out of the charge of discrimination."[10] Although "[v]erbal precision and finesse [in the charge] are not required," a Title VII lawsuit can include only those allegations that are "like or related to [those] allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission."[11]

Davenport's EEOC charge stated as follows:

---

[8] *Id.* at 249–50.
[9] FED. R. CIV. P. 56(a).
[10] *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970).
[11] *Id.*

6

Case: 17-30388   Document: 00514532348   Page: 7   Date Filed: 06/28/2018
Case 2:16-cv-13133-MLCF-MBN   Document 56   Filed 07/05/18   Page 8 of 18

No. 17-30388

> I began my employment with Edward Jones Financial on October 13, 2014. On October 28, 2015, my supervisor, Brenden Coyne, made an inappropriate comment about me to a client. When the client came into the office, I asked the client to consider joining our organization and in response, Mr. Coyne stated to the potential client, "if you join, I will show the nudies, of Tyanne." On October 29, 2015, I contacted Human resources, Susan Miller, who instructed me to return to work while [an] investigation is conducted. On November 1, 2015, I faxed a leave request for days off, after consulting with my counselor/doctor. The company employs over 500 persons. I believe I have been retaliated against in violation of Title VII of the Civil Right Act of 1964, as amended, because of being sexually harassed.

Although Davenport did not have to use the magic words "constructive discharge," she had to include allegations "like or related to" her constructive discharge claim.[12] Davenport did not do so. She did not allege facts suggesting that she endured severe or pervasive harassment that would have compelled a reasonable employee to resign. In fact, she did not allege that she left her employment or her reasons for leaving. Rather, Davenport merely alleged that Coyne inappropriately discussed a nude picture of her in front of a customer, and that, as a result, she took a leave of absence. Her description of the nude picture incident and resulting leave of absence was brief and she suggested no link between that incident and her departure from Edward Jones. Therefore, the district court properly dismissed this claim for lack of exhaustion.

## B. Davenport's bonus quid pro quo claim

Before we address the merits of Davenport's bonus-based quid pro quo claim, we briefly examine our jurisdiction.[13] Though neither party raised the issue below nor on appeal, at oral argument, the Panel questioned counsel

---

[12] *Id.*
[13] *E.E.O.C. v. Agro Distrib., LLC*, 555 F.3d 462, 467 (5th Cir. 2009) (citing *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001)) (noting that, when necessary, this Court "must consider jurisdiction *sua sponte*").

Case: 17-30388      Document: 00514532348      Page: 8      Date Filed: 06/28/2018
Case 2:16-cv-13133-MLCF-MBN   Document 56   Filed 07/05/18   Page 9 of 18

No. 17-30388

whether Davenport adequately exhausted her administrative remedies regarding her bonus-based claim, and, if Davenport had not done so, whether this Panel had jurisdiction to consider that claim. Assuming without deciding that Davenport did not adequately exhaust her administrative remedies,[14] we are satisfied that such a deficiency does not divest us of jurisdiction.

In *Womble v. Bhangu*, this Court held that the failure to exhaust administrative remedies under Title VII does not deprive a federal court of jurisdiction.[15] A year later, we reaffirmed that holding in *Young v. City of Houston*, specifically noting that "a failure of the EEOC [exhaustion] prerequisite does not rob a court of jurisdiction."[16] But, in a number of other cases decided after *Womble* and *Young*, we have stated that the Title VII exhaustion requirement is jurisdictional.[17] It is well-settled that "one panel of our court may not overturn another panel's decision, absent an intervening change in the law."[18] Thus, when there is a conflict between decisions within this Circuit, the earlier panel decision controls.[19] We therefore adhere to

---

[14] Though Davenport briefly described the nude picture incident in her EEOC charge, she did not, even in general terms, refer to the bonus comments or any other incident that could reasonably be regarded as quid pro quo harassment. Therefore, she may have failed to exhaust her administrative remedies regarding this claim. *See Fine v. GAF Chem. Corp.*, 995 F.2d 576, 577–78 (5th Cir. 1993) (finding that a plaintiff's administrative remedies were not exhausted with respect to an incident of sexual discrimination because the incident sued upon was separate from the one raised in her administrative charge); *see also Minix v. Jeld-Wen, Inc.*, 237 F. App'x 578, 588 (11th Cir. 2007) (explaining that "[a]n allegation of harassment premised on a supervisor's tangible employment action is not 'like or related to' and does not 'gr[o]w out of' an allegation of harassment premised solely on the existence of a hostile working environment").

[15] 864 F.2d 1212, 1213 (5th Cir. 1989).

[16] 906 F.2d 177, 180 (5th Cir. 1990).

[17] *See, e.g.*, *Tolbert v. United States,* 916 F.2d 245, 247 (5th Cir. 1990); *Randel v. Dep't. of U.S. Navy*, 157 F.3d 392, 395 (5th Cir. 1998).

[18] *Jacobs v. Nat'l Drug Intelligence Cntr.*, 548 F.3d 375, 378 (5th Cir. 2008).

[19] *Camacho v. Tex. Workforce Comm'n,* 445 F.3d 407, 410 (5th Cir. 2006).

Case: 17-30388      Document: 00514532348     Page: 9     Date Filed: 06/28/2018
Case 2:16-cv-13133-MLCF-MBN   Document 56   Filed 07/05/18   Page 10 of 18

No. 17-30388

*Womble* and *Young* and find that the exhaustion requirement under Title VII is not jurisdictional.[20]

Rather, as determined by *Womble* and *Young*, the exhaustion requirement under Title VII is merely a precondition to filing suit.[21] As such, it is subject to waiver and estoppel.[22] Here, although Davenport may have failed to exhaust her administrative remedies, Edward Jones waived any exhaustion argument by declining to raise that argument below or on appeal.

We now turn to the merits of Davenport's bonus-based quid pro quo claim. Davenport asserts that the district court improperly dismissed this claim because it failed to credit her uncontroverted deposition testimony that Coyne promised her "big bonuses" if she dated Fisher. Edward Jones counters on three grounds. First, Edward Jones argues that, as a matter of law, this Court does not consider the denial of a bonus to be a tangible employment action. Second, Edward Jones argues that, even if the denial of bonus could be

---

[20] *Womble* and *Young* are in line with the majority view. *See, e.g.*, *Adamov*, 726 F.3d 851; *Tyler v. Univ. of Ark. Bd. of Tr.*, 628 F.3d 980, 989 (8th Cir. 2011); *Vera v. McHugh*, 622 F.3d 17, 29–30 (1st Cir. 2010); *Kraus v. Presidio Tr. Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1043 (9th Cir. 2009); *Douglas v. Donovan*, 559 F.3d 549, 556 n.4 (D.C. Cir. 2009); *Wilson v. MVM, Inc.*, 475 F.3d 166, 175 (3d Cir. 2007); *Francis v. City of New York*, 235 F.3d 763 (2d Cir. 2000); *Gibson v. West*, 201 F.3d 990, 994 (7th Cir. 2000); *Jackson Seaboard Coast Line R. Co.*, 678 F.2d 992, 1002 (11th Cir. 1982).

Moreover, even if we were not bound by *Womble* and *Young*, the Supreme Court's decision in *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006) strongly suggests that those decisions reached the correct result. In *Arbaugh*, the Supreme Court unanimously held that Title VII's employee-numerosity requirement is an element of a plaintiff's claim, not a jurisdictional requirement. In doing so, the Court announced a "readily administrable bright line" rule: "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 515–16. In *Adamov v. U.S. Bank Nat. Ass'n*, the Sixth Circuit held that *Arbaugh* implicitly overturned its old rule that Title VII exhaustion requirements are jurisdictional. 726 F.3d 851, 856 (6th Cir. 2013). The Sixth Circuit noted that 42 U.S.C. § 2000e–5 describes the EEOC process but that, beyond general administrative instructions, the "statute says no more about the exhaustion requirement or any connection between the EEOC process and a limit on courts' jurisdiction to hear Title VII cases." *Id.*

[21] *See* 4–70 LARSON ON EMPLOYMENT DISCRIMINATION § 70.03 (2017).

[22] *Id.*

Case: 17-30388 Document: 00514532348 Page: 10 Date Filed: 06/28/2018
Case 2:16-cv-13133-MLCF-MBN Document 56 Filed 07/05/18 Page 11 of 18

No. 17-30388

a tangible employment action, it must be causally related to a supervisor's request that a subordinate engage in sexual acts with the supervisor—not a supervisor's request that a subordinate "date" a third party. Third, Edward Jones contends that, in any event, Davenport failed to come forward with sufficient evidence to create a genuine issue as to whether she was denied a bonus. We address these arguments in turn.

At the summary judgment stage, Davenport was obliged to set forth evidence from which a reasonable jury could find (1) that she suffered a "tangible employment action" and (2) that the action was causally related to the acceptance or rejection of Coyne's sexual harassment.[23] If a plaintiff can prove these elements, her employer "is vicariously liable per se."[24]

In *Burlington Industries, Inc., v. Ellerth*, the Supreme Court defined a tangible employment action as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[25] The Court explained that, in "most cases," a tangible employment action "inflicts direct economic harm."[26] With that principle as its foundation, the Court found that the "denial of a raise" was a tangible employment action.[27]

In *Russell v. Principi*, the D.C. Circuit found that the denial of an $800 bonus constituted a tangible employment action.[28] In so finding, the D.C. Circuit noted that "a bonus is a tangible, quantifiable award . . . . [i]t has a . . . direct, measurable, and immediate effect."[29] Although this Circuit has

---

[23] *Casiano*, 213 F.3d at 283–84.
[24] *Id.* (citing *Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742, 761–62 (1998)).
[25] 524 U.S. at 761.
[26] *Id.* at 762.
[27] *Id.* at 761.
[28] 257 F.3d 815, 819 (D.C. Cir. 2001) (rejecting "the notion that a denial of a monetary bonus is not a cognizable employment action under Title VII").
[29] *Id.*

10

Case: 17-30388    Document: 00514532348     Page: 11     Date Filed: 06/28/2018
Case 2:16-cv-13133-MLCF-MBN Document 56 Filed 07/05/18 Page 12 of 18

No. 17-30388

not yet addressed whether the denial of a monetary bonus may qualify as a tangible employment action, we agree with the D.C. Circuit that, so long as the bonus is "significant," it can.[30] A monetary bonus is a tangible award.[31] It, like a raise, directly results in greater remuneration for the employee. Certainly, it is more analogous to a raise than to something less quantifiable, such as undesirable working conditions. Under the proper circumstances, the denial of a monetary bonus, which "inflicts direct economic harm," can constitute a tangible employment action.[32]

Even if we consider the denial of a bonus to be a tangible employment action, Edward Jones contends, Davenport's claim must fail because she did not allege that the bonuses were conditioned upon her acquiescence to advances from Coyne. They argue that because Davenport merely alleged that the bonuses were conditioned upon dating *a third party*, she may not proceed on a quid pro quo claim.

In support of this argument, Edward Jones relies on *Alaniz v. Zamora–Quezada*.[33] That case involved a direct supervisor who made persistent sexual overtures toward four of his former employees.[34] It did not involve a supervisor's request that a subordinate perform sexual favors for a third party. *Alaniz* does not limit the scope of quid pro quo harassment to advances designed to benefit only the supervisor. Moreover, *Alaniz* itself notes that, in order to establish quid pro quo liability, a plaintiff simply must show that the tangible employment action she suffered resulted from her "acceptance or rejection of h[er] supervisor's alleged *sexual harassment*."[35]

---

[30] *See Ellerth*, 524 U.S. at 761. Edward Jones does not dispute the significance of the alleged bonuses.
[31] *Cf. id.*
[32] *Id.* at 762.
[33] *See* 591 F.3d 761 (5th Cir. 2009).
[34] *See id.* at 768–70.
[35] *Id.* at 772 (emphasis added); *see also Casiano*, 213 F.3d at 283.

Case: 17-30388 Document: 00514532348 Page: 12 Date Filed: 06/28/2018
Case 2:16-cv-13133-MLCF-MBN Document 56 Filed 07/05/18 Page 13 of 18

No. 17-30388

Here, Coyne allegedly conditioned the receipt of "big bonuses" upon Davenport's submission to his requests that she date Fisher. Because Coyne made the requests, *he* engaged in the sexual harassment, *not Fisher.*[36] It is of no consequence that a third-party was to be the beneficiary—Coyne was the harasser.

Edward Jones nevertheless argues that Davenport's claim fails because she cannot point to any explicit sexual advance: she can only point to requests that she "date" Fisher. Our case law only requires that the tangible employment benefit be contingent on the acceptance or rejection of the "supervisor's sexual harassment,"[37] which we have defined as "[u]nwelcome[] sexual advances, *requests for sexual favors, and other verbal or physical conduct of a sexual nature.*"[38] To this point, Davenport testified that Coyne repeatedly asked her to engage in a romantic relationship with Fisher so that Coyne could obtain Fisher's business. This testimony, especially when considered in combination with Davenport's testimony about the nude picture incident, evidences that Coyne's conduct was sexual in nature[39] and thus could give rise to a quid pro quo sexual harassment claim.[40]

Edward Jones's final argument warrants more detailed consideration. Edward Jones contends that even if Coyne had promised Davenport that she would receive bonuses if she dated Fisher (or conversely that she would be

---

[36] *See Alaniz*, 591 F.3d at 772.
[37] *Id.*
[38] *Simmons v. Lyons*, 746 F.2d 265, 270 (5th Cir. 1984) (emphasis added); *see also* 29 C.F.R. § 1604.11.
[39] Because "requests for sexual activity are not always made explicitly," a reasonable juror could find that Coyne's behavior constituted a request for a sexual favor. *Gallagher v. Delaney*, 139 F.3d 338, 346 (2d Cir. 1998), *abrogated in part on other grounds by Ellerth*, 524 U.S. 742.
[40] This conclusion accords with *Vance v. Ball State Univ.*, 133 S. Ct. 2434 (2013). In that case, the Supreme Court found that an employee whose supervisor told her to "[d]ate [him] or clean the toilets for a year" could state an actionable quid pro quo claim so long as the "reassignment" to toilet duty "had economic consequences." 133 S. Ct. at 2447 n.9.

Case: 17-30388 Document: 00514532348 Page: 13 Date Filed: 06/28/2018
Case 2:16-cv-13133-MLCF-MBN Document 56 Filed 07/05/18 Page 14 of 18

No. 17-30388

denied a bonus if she refused to date Fisher), Davenport's claim cannot survive summary judgment because she failed to come forward with sufficient evidence that she was denied a bonus for refusing to date Fisher.

All Davenport knew was that she received a $400 bonus in March of 2015 after she completed her training and that Coyne had given her an "exceeds expectations" rating on her initial review. Based on this knowledge, she reasonably believed Coyne could influence subsequent bonus decisions through the review process. But Davenport produced no evidence of Edward Jones's bonus structure; more particularly, she produced no evidence that she was eligible for or scheduled to receive a bonus in October 2015 simply because she received another "exceeds expectations" rating from Coyne. Additionally, she produced no evidence that Coyne either recommended for or against her receiving a bonus at that time. The evidence only shows that, in October 2015, Coyne rated Davenport as "exceeds expectations" and recommended that she receive a 4% raise.[41] In sum, Davenport produced no summary-judgment evidence that, under Edward Jones's bonus policy, she was eligible for a bonus in October 2015 that Coyne could either approve or disapprove. Consequently, Davenport produced no summary judgment evidence that Coyne and Edward Jones denied her a bonus because she refused to date Fisher.

On summary judgment, although we must view the record evidence in the light most favorable to the plaintiff and "assume the facts to be as [she] allege[s],"[42] the facts and evidence still must be sufficient to allow a reasonable jury to find in her favor. Here, they are not. Without "significantly probative" evidence indicating that a bonus was available and that Davenport was eligible for and denied that bonus, her quid pro quo claim cannot succeed.[43]

---

[41] The October 2015 review form, however, did not include a bonus recommendation provision.

[42] *Oncale*, 523 U.S. at 76.

[43] *See Liberty Lobby*, 477 U.S. at 249–50.

13

Case: 17-30388      Document: 00514532348     Page: 14     Date Filed: 06/28/2018
Case 2:16-cv-13133-MLCF-MBN  Document 56  Filed 07/05/18  Page 15 of 18

No. 17-30388

## C. Davenport's state law invasion of privacy claim

Davenport also contends that the district court improperly dismissed her false light invasion of privacy claim, which she based upon Coyne's nude picture comment. Edward Jones argued in its motion that Davenport's claim could not survive summary judgment because this workplace joke could not form the basis of a false light invasion of privacy claim. The district court agreed, finding that "there [wa]s no objective possibility that this comment would place Davenport in a false light."

Under Louisiana law, to succeed on a false light invasion of privacy claim, a plaintiff must show that she was subjected to false "publicity" that was "unreasonable" and that "seriously interfere[d]" with the plaintiff's privacy interest.[44] The defendant's conduct "must at least be injurious and highly offensive to the reasonable man [and] reckless in its disregard for its offensiveness."[45] "[T]he reasonableness of the defendant's conduct . . . is determined by balancing the plaintiff's interest in protecting h[er] privacy from serious invasions with the defendant's interest in pursuing his course of conduct."[46] An act that causes merely "some embarrassment or offense" does not necessarily "constitute an unreasonable invasion of [] privacy."[47]

Here, although Davenport testified that Coyne's nude picture comment embarrassed her, she also conceded that the comment was merely an unsuccessful joke. Although there is a paucity of false light invasion of privacy

---

[44] *Jaubert v. Crowley Post-Signal, Inc.*, 375 So. 2d 1386, 1389 (La. 1979); *see also Zellinger v. Amalgamated Clothing*, 28-127 (La. App. 2d Cir. 4/3/96), 683 So. 2d 726, 734 (Stewart, J., dissenting) ("[I]nvasion of privacy may be established only by proof that defendant's conduct is so unreasonable that it seriously interferes with plaintiff's privacy interest.").

[45] *Roshto v. Hebert*, 439 So. 2d 428, 432 (La. 1983) (Calogero, J., concurring).

[46] *Perere v. La. Television Broad. Corp.*, 2000-1656 (La. App. 1st Cir. 9/28/01), 812 So. 2d 673, 676.

[47] *Id.* at 677; *see also Stern v. Doe*, 2001-0914 (La. App. 4th Cir. 12/27/01), 806 So. 2d 98, 102.

14

Case: 17-30388 Document: 00514532348 Page: 15 Date Filed: 06/28/2018
Case 2:16-cv-13133-MLCF-MBN Document 56 Filed 07/05/18 Page 16 of 18

No. 17-30388

case law in Louisiana, in other jurisdictions, where the offending conduct is intended and taken as a joke, the courts have found no actionable invasion of privacy.[48] For example, in *Stien v. Marriot Ownership Resorts, Inc.*, a manager produced a videotape at a company party that jokingly portrayed the sexual activity of an employee.[49] The court noted that the videotape proceeded "in poor taste and its presentation [was] rather ill-advised," but it found that there was no actionable invasion of privacy because the manager clearly intended the video as a joke.[50] Similarly, we cannot disagree with the district court's conclusion that, under these circumstances, the nude picture joke was not an unreasonable invasion of Davenport's privacy.

## IV.

For these reasons, we AFFIRM the district court's order.

---

[48] *See Wright v. Micro Electronics, Inc.*, 752 N.W. 2d 466 (Mich. 2008) (overturning a false light invasion of privacy judgment because the plaintiff admitted that the offending material "was intended and taken as a 'joke' perpetrated by a coworker"); *cf. Walko v. Kean Coll.,* 561 A.2d 680, 683 (N.J. 1988) ("A parody or spoof that no reasonable person would read as a factual statement, or as anything other than a joke—albeit a bad joke—cannot be actionable as a defamation.").

[49] 944 P.2d 374 (Utah Ct. App. 8/14/97); *see also Wright*, 752 N.W. 2d 466; *Walko*, 561 A.2d at 683.

[50] *Id.* at 379–81.

Case: 17-30388    Document: 00514532348    Page: 16    Date Filed: 06/28/2018
Case 2:16-cv-13133-MLCF-MBN  Document 56  Filed 07/05/18  Page 17 of 18

No. 17-30388

STEPHEN A. HIGGINSON, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's resolution of Davenport's constructive discharge and invasion of privacy claims. I also agree with the majority's discussion of the law governing Davenport's bonus-based quid pro quo claim. I respectfully dissent, however, from its decision to affirm summary judgment on the bonus claim.

As the opinion recognizes, offering an employee a bonus in exchange for sexual favors with a potential customer is quid pro quo sexual harassment under Title VII. Davenport presents evidence that her boss told her at least three times that she would receive "big bonuses" in exchange for dating a potential customer. Davenport declined the offer, and received no bonus. I can find no authority—and the majority cites none—suggesting that this evidence is insufficient to create a triable issue of fact.

Brendan Coyne was Davenport's only direct supervisor. Coyne hired Davenport, formally evaluated her work performance, and approved her salary increases and bonuses. In March of 2015, Coyne approved a $400 bonus for Davenport. As Edward Jones' attorney conceded at oral argument, Coyne "was responsible for giving [Davenport] a bonus" and could have approved a bonus "based on good performance or any other vague thing."

Presented with this evidence, a jury might conclude that Coyne was joking or lying about a bonus, and therefore decide that no quid pro quo existed. Or the jury might take Coyne—the man who hired Davenport, supervised her, and granted her last bonus—at his word. For the ultimate finder of fact, the evidence permits either inference. But at the summary judgment stage "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

Case: 17-30388    Document: 00514532348    Page: 17    Date Filed: 06/28/2018
Case 2:16-cv-13133-MLCF-MBN Document 56 Filed 07/05/18 Page 18 of 18

No. 17-30388

(1986). This genuine dispute of fact precludes summary judgment, particularly where, as here, "it would be difficult to imagine either documentation or higher level review" of the harasser's conduct. *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 98 (2d Cir. 2002).